# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:11cv330

| | | |
|---|---|---|
| SYNOVUS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| OKAY PROPERTIES, LLC and | ) | |
| WILLIAM O'DONNELL, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Synovus Bank's Motion to Dismiss Counterclaims [Doc. 7]; Synovus Financial Corp.'s Motion to Dismiss Third Party Claims [Doc. 8]; Synovus Bank's Motion to Dismiss Amended Counterclaims [Doc. 11] and Synovus Financial Corp.'s Motion to Dismiss Amended Third Party Claims [Doc. 12].

## I.    PROCEDURAL BACKGROUND

In August 2007, the Defendant Okay Properties, LLC ("Okay Properties") borrowed money from the National Bank of South Carolina ("NBSC") to finance the purchase of an undeveloped lot in a residential development known as the Seven Falls Golf & River Club ("Seven Falls") in

Henderson County, North Carolina. The Defendant William O'Donnell, Jr. ("O'Donnell") executed a guaranty of that loan. On December 8, 2011, after the Defendants failed to repay the loan, the Plaintiff Synovus Bank -- the successor-in-interest through name change and merger with NBSC (hereinafter referred to as the "Bank") -- initiated this action. [Doc. 1].

The Defendants filed their original Answer, Affirmative Defenses, and Counterclaims ("Answer") on March 16, 2012. [Doc. 6]. The Answer names Synovus Financial Corp. ("Synovus Financial"), as well as Seven Falls, LLC and Keith Vinson (collectively, the "Developer"), as additional "defendants" to the action and purports to assert "counterclaims" against them. The Answer, however, does not identify these newly added parties as third party defendants, nor is a third party complaint clearly asserted anywhere in the pleading. [Id.]. Despite these deficiencies, Synovus Financial filed a "Motion to Dismiss the Defendants' Third Party Claims" on April 3, 2012. [Doc. 8]. On that same date, the Bank filed a Motion to Dismiss the Defendants' Counterclaims. [Doc. 7].

Within the time for responding to these motions, the Defendants filed an Amended Answer, Affirmative Defenses, and Counterclaims ("Amended

Answer") on April 20, 2012. [Doc. 10].[1] In light of this amended pleading, the Motions to Dismiss were rendered moot. See Fed. R. Civ. P. 15(a)(1)(B).

Thereafter, on May 4, 2012, the Bank and Synovus Financial renewed their motions to dismiss with respect to the Defendants' amended pleading. [Docs. 11, 12]. It is these motions that the Court shall now address.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is guided by the Supreme Court's instructions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). As the Fourth Circuit has noted, "those decisions require that complaints in civil actions be alleged with greater specificity than previously was required." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct.

---

[1]This amended pleading again names Synovus Financial Corp., Seven Falls, LLC, and Keith Vinson as parties, while also adding Seven Falls Golf and River Club, LLC. Like the Defendant's original pleading, however, the Amended Answer fails to identify these newly added "defendants" as third-party defendants, nor is a third party complaint clearly asserted anywhere in the amended pleading.

3

1937 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). To be

"plausible on its face," a plaintiff must demonstrate more than "a sheer

possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129

S.Ct. 1937.

In reviewing the complaint, the Court must accept the truthfulness of all

factual allegations but is not required to assume the truth of "bare legal

conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The

mere recital of elements of a cause of action, supported only by conclusory

statements, is not sufficient to survive a motion made pursuant to Rule

12(b)(6)." Walters, 684 F.3d at 439.

To survive a Rule 12(b)(6) motion, "a complaint must state a 'plausible

claim for relief.'" Id. (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937).

Determining whether a complaint states a plausible claim for relief is "a

context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.

2009), which requires the Court to assess whether the factual allegations of

the complaint are sufficient "to raise a right to relief above the speculative

level," Twombly, 550 U.S. at 555, 127 S.Ct. 1955. As the Fourth Circuit has

recently explained:

> To satisfy this standard, a plaintiff need not forecast
> evidence sufficient to prove the elements of the claim.

> However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

## III.    FACTUAL BACKGROUND

Viewing the allegations of the Amended Answer and Counterclaim as true, the following is a summary of the relevant facts.

The Seven Falls Development is a subdivision located in Henderson County, North Carolina that originally consisted of approximately 1,600 acres of undeveloped land. [Am. Answer, Doc. 10 at ¶ 39]. Sometime around 2006, the Bank loaned the Developer funds to purchase the land that would become the Seven Falls Development. [Id. at ¶ 41]. In exchange, the Bank received special rights to act as the primary or exclusive lender for investors who wished to finance their lot purchases. [Id.].

Okay Properties is a limited liability company organized under the laws of the State of Delaware and conducting business in North Carolina. [Complaint, Doc. 1 at ¶ 2; Am. Answer, Doc. 10 at ¶ 2]. Okay Properties has two members: Defendant O'Donnell, a resident of Illinois, and non-party Kent

E. Smith, a resident of North Carolina.  [Complaint, Doc. 1 at ¶ 3; Am. Answer, Doc. 10 at ¶ 3].

In 2007, Okay Properties entered into a contract with the Developer to purchase a lot at Seven Falls for $375,000.  [Am. Answer, Doc. 10 at ¶ 59].  On August 9, 2007, Okay Properties executed a promissory note ("Note") in favor of Bank in the principal amount of $375,000, secured by a Deed of Trust on the property.  [Note, Doc. 1-2; Deed of Trust, Doc. 1-3].[2]  At that time, O'Donnell executed a guaranty agreement to the Bank in which he individually promised to pay the Note if Okay Properties failed to do so.  [Guaranty, Doc. 1-4].  On September 11, 2009, Okay Properties executed a promissory note renewing its obligation under the Note.  [Renewal Note, Doc. 1-5].  At that time, O'Donnell renewed his guaranty agreement.  [Renewal Guaranty, Doc. 1-6].

The Defendants allege that the Bank entered into a joint venture with the Developer to market and sell the Seven Falls Development, which included nearly $90,000,000 in development loans, participation by the Bank in

---

[2]The exhibits submitted with the Bank's Motion are "integral to and explicitly relied on in" the Defendant's Answer and the authenticity of such exhibits is not challenged.  See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).  Therefore, the Court will consider these exhibits, but such consideration does not convert this to a motion for summary judgment.

marketing activities, the promotion of the Bank as the primary or preferred lender for lot purchase loans, and other similar conduct. [Id. at ¶ 52].

The Defendants allege that at the time that the promissory notes and guaranties were executed, they were advised by representatives of the Bank and Seven Falls that given the special financing options made available by the Bank, "this was a short term investment that was guaranteed to outperform the market given the prices being obtained for lots, the improvements that were being constructed, the banking of [the Bank] to complete the improvements, and the anticipated future re-sale prices." [Id. at ¶ 59].

The Defendants further assert that the appraisals obtained by the Bank and the Developer "were intentionally and selectively done to create artificially inflated values in order to substantially increase the comparable lot sale prices for future sales in the Seven Falls Development." [Id. at ¶ 62]. They allege that these inflated sales prices "generated windfall cash flows" for the Bank and the Developer. [Id.]. They further allege that the Bank extended these "excessively large land loans" in order to substantially increase its lending volume, and the resulting fees and interest, so as to increase its short-term profits. By focusing its sales and lending efforts on "high-worth individuals" and obtaining guaranties related to the property sales, the Defendants allege

that the Bank thereby ensured a "fall-back scenario" where it would incur no risk from its involvement in the lot value inflation scheme. [Id.].

Despite receiving millions of dollars from purchasers, the Developer made no material improvements to Seven Falls. [Id. at ¶ 53]. Due to the lack of roads and other infrastructure, lot purchasers could not access their properties or receive construction permits to build residences. [Id. at ¶ 58]. Vinson is currently facing numerous state and federal criminal charges for his conduct related to the Seven Falls Development, and many of his affiliated companies have filed for bankruptcy. [Id. at ¶¶ 53, 54]. Based upon the complete absence of material improvement to the Seven Falls Development, the criminal charges pending against Vinson, and the "outrageous amount of funds which have essentially disappeared into the hands of the [Developer] and [the Bank]," the Defendants allege that the Developer never intended to construct any of the improvements, and that the Bank "actually or constructively ratified this intent with its complicit actions in supporting and enabling the Seven Falls Defendants' actions." [Id. at ¶ 55]. Specifically, the Defendants allege that the Bank ratified and affirmed the Developer's conduct by "continuing to encourage the sale of lots by the [Developer] and renew lot purchaser's loans in 2008 and 2009 based on outdated appraisals which the

bank knew or should have known were impossible and fraudulent...." [Id. at ¶ 56].

The Defendants contend that the Bank contributed to the failure of the Seven Falls Development by failing to comply with its own internal lending standards in: (1) failing to undertake any reasonable due diligence in investigating Vinson's background and experience; (2) failing to properly inspect and oversee the Seven Falls construction efforts; and (3) directing its lending representatives to press potential purchasers to obtain 100% financing loans and to emphasize the soundness of an investment in Seven Falls. [Id. at ¶ 64].

The Defendants further allege that as the lack of construction and imminent failure of Seven Falls became clear to the Bank in 2008 and 2009, it began offering refinancing loans to some purchasers, including the Defendants. The Defendants contend that in the course of refinancing negotiations, the Bank failed to inform them that it had cancelled and withdrawn loans to the Seven Falls Development, instead assuring the Defendants that "development at Seven Falls . . . would be completed, even if [the Bank] had to hire a new developer to complete construction and amenities...." [Id. at ¶ 65].

## IV.   ANALYSIS

### A.   The Bank's Motion to Dismiss

#### 1.   Plausibility of Defendants' Counterclaims

The Bank first moves to dismiss the Defendants' Amended Counterclaims on the ground that they fail to meet the plausibility standards of <u>Twombly</u> and <u>Iqbal</u>.  Specifically, the Bank argues that the basic premise of the Defendants' Counterclaims -- that a bank would collude with a developer to induce individuals to buy lots at inflated prices and that a bank would knowingly accept the overvalued land as collateral for loans -- is so contrary to the Bank's long-term business interests as to be implausible as a matter of law.  [Doc. 11-1 at 4-10].

The Court recently addressed a similar argument in <u>Synovus Bank v. Coleman</u>, No. 1:11cv66 (W.D.N.C. Aug. 15, 2012), in which the Court stated as follows:

> In support of this argument, the Bank relies on numerous district court decisions, including <u>Feeley v. Total Realty Management</u>, 660 F.Supp.2d 700 (E.D. Va. 2009), <u>Goldstein v. Bank of America</u>, No. 1:09cv329, 2010 WL 1252641 (W.D.N.C. Jan. 10, 2010) (Howell, M.J.), and <u>Bank of America v. Lykes</u>, No. 1:09cv435, 2010 WL 2640454 (W.D.N.C. May 20, 2010) (Howell, M.J.), which dismissed similar claims against lenders as implausible.  In each of these cases, however, the court determined that the

plaintiffs had failed to allege specific facts to support their claims and had failed to make plausible allegations to support the theory that a lender would be willing to collude or conspire with a developer to make under-collateralized loans to borrowers to the detriment of the lender's own financial interests. See Feeley, 660 F.Supp.2d at 708; Goldstein, 2010 WL 1252641, at *5; Lykes, 2010 WL 2640454, at *6. By contrast, in the present case, the Defendant's allegations, when assumed to be true, establish a plausible reason (i.e., the desire for short-term profitability) for the Bank's willingness to knowingly make an under-collateralized loan to the Defendant, even if such loan may have been, as argued by the Bank, contrary to the Bank's long-term financial interests. As such, the Court finds that Feeley, Goldstein, and Lykes are distinguishable from the case at bar.

Coleman, No. 1:11cv66, slip op. at 8-9. This Court recently explained in another similar case:

As the events of the recent economic crisis have demonstrated, financial institutions do not always make the most prudent business decisions, and they may accept what would otherwise appear to be unreasonable economic risks for the sake of immediate, short-term profitability. Thus, while the Bank's conduct, as alleged by the Defendants, may not appear to have been the most prudent course of action for the Bank to take in terms of its long-term business interests, that certainly does not mean that such conduct is not plausible as a matter of law. Indeed . . . Synovus Bank would not be the first corporation in the history of modern economics to undertake an action that carried substantial risk to its

> long term financial viability in order to increase short
> term profits or revenue.

Synovus Bank v. Karp, No. 1:10cv172, slip op. at 19-20 (W.D.N.C. Aug. 15, 2012) (internal citation, quotation marks, and footnote omitted).  The Court finds the rationale of both Coleman and Karp to be equally applicable to the present case.  Thus, construing the well-pled factual allegations of the Counterclaims in the light most favorable to the Defendants, the Court concludes that the Defendants' theory of liability is not so implausible as to warrant dismissal of their claims.  For these reasons, the Bank's Motion to Dismiss the Defendants' Amended Counterclaims as implausible is denied.

## 2.    Federal Claim under ILSA

The Bank moves to dismiss the Defendants' counterclaim for violation of the Interstate Land Sales Full Disclosure Act ("ILSA").  [Doc. 11-1 at 16-17].

The ILSA creates a private right of action against "developers" and "agents of developers" in connection with sales or leases made in violation of its provisions.  15 U.S.C. § 1709.  The Act "is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers."  Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778, 96 S.Ct. 2430, 2433, 49 L.Ed.2d 205 (1976).  "The Act also requires sellers to inform buyers,

12

prior to purchase, of facts which would enable a reasonably prudent individual to make an informed decision about purchasing a piece of real property." Burns v. Duplin Land Dev., Inc., 621 F.Supp.2d 292, 301 (E.D.N.C. 2009). A "developer" is defined under the ILSA as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision . . . ." 15 U.S.C. § 1701(5). An "agent" is defined as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision. . . ." 15 U.S.C. § 1701(6).

Lending institutions acting in the ordinary course of their business are generally not considered developers within the meaning of the ILSA. See Cumberland Cap. Corp. v. Harris, 621 F.2d 246, 251 (6th Cir. 1980); Kenneally v. Bank of Nova Scotia, 711 F.Supp.2d 1174, 1191-92 (S.D. Cal. 2010) (collecting cases); Hammar v. Cost Control Mktg. and Sales Mgmt. of Va., Inc., 757 F.Supp. 698, 702 (W.D. Va. 1990). "It is only where a financial institution acts beyond its ordinary course of dealing as a lending institution and participates in the actual development, marketing or sale of property that liability may arise under ILSA." Thompson v. Bank of Am., No. 7:09-CV-89-H, 2011 WL 1253163, at *1 (E.D.N.C. Mar. 30, 2011) (citations omitted).

In the present case, the factual allegations in the Amended Counterclaims fail to support a claim that the Bank was so involved in the marketing or sale of the Seven Falls Development that it went beyond its function as a commercial bank that it could be considered a "developer" within the meaning of the ILSA. While the Defendants allege that the Bank and the Developer "engaged in joint marketing efforts," their allegations at most establish that the parties engaged in joint advertising of their respective services (sales and financing) and that Bank representatives were present at various Seven Falls marketing events. [Am. Answer, Doc. 10 at ¶¶ 44, 45].[3] The Amended Counterclaims, however, contain no factual allegations sufficient to support a finding that these activities constituted the type of involvement by the Bank in the sale, offer to sell, or advertising for sale of property such that the Bank would fall within the purview of the ILSA.

In sum, the allegations in the Amended Counterclaims are insufficient to demonstrate that the Bank shed its role as an ordinary lending institution and actively participated in the marketing or sale of the lots at Seven Falls

---

[3]In evaluating the sufficiency of the Defendants' allegations made in support of this claim, the Court disregards all of the conclusory allegations made by the Defendants, such as the allegations that the Bank's "role in these marketing and sales efforts far exceeded that of an arm's length financing institution" and that the Bank "was acting as a 'Developer' under the [ILSA]." [Am. Answer, Doc. 10 at ¶ 46].

such that liability could be imposed pursuant to the ILSA.  Accordingly, the Court will grant the Bank's Motion to Dismiss the Defendants' ILSA claim.

### 3.    State Law Claims

#### a.    Joint Venture Theory

The Bank argues that, to the extent that the Defendants' Counterclaims rely upon a theory of a joint venture between the Bank and the Developer, such claims are not supported by well-pled factual allegations and thus fail as a matter of law.  [Doc. 11-1 at 10-12].

To establish a joint venture under North Carolina law, "there must be (1) an agreement, express or implied, to carry out a single business venture *with joint sharing of the profits*, and (2) *an equal right of control* of the means employed to carry out the venture." Southeastern Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 326, 572 S.E.2d 200, 204 (2002) (citation and internal quotation marks omitted) (emphasis in original).  In the present case, the Defendants' allegations of a joint venture between the Bank and the Developer are legally insufficient with respect to both elements.  As to the first element, the Defendants' well-pleaded factual allegations establish, at most, that the relationship between the Bank and the Developer was that of a lender and borrower.  [See, e.g., Am. Answer, Doc. 10 at ¶ 52(a) (loans to

Developer) and ¶ 52(e) (joint promotion of the Bank as primary or preferred lender)]. Such a relationship between a bank and developer, standing alone, is insufficient to establish a joint venture as a matter of law. See Edwards v. Northwestern Bank, 39 N.C. App. 261, 276, 250 S.E.2d 651, 661 (1979). As the Edwards Court noted, to find a joint venture based on the existence of a mere debtor/creditor relationship "would seriously disrupt the carefully constructed system of secured financing." Id. at 277, 250 S.E.2d at 662.

Further, the Defendant's allegation that the Bank and Developer shared profits is supported only by conclusory allegations. [Id. at ¶ 52(c) (alleging "[u]pon information and belief" that NBSC received more than $3,000,000 in proceeds from lot sales in the development")]. In any event, the fact that the Bank may have received some kind of fee when the Developer closed a sale on a lot, as a matter of law, does not amount to a sharing of profits with the Developer. See Reeve & Assocs., Inc. v. United Carolina Bank, No. 96 CVS 4695, 1997 WL 33446634, at *3 (N.C. Bus. Ct. Oct. 6, 1997) (concluding that repayment of debt owed by debtor to lender does not constitute the "sharing of profits" for purposes of a joint venture).

The Defendants also fail to make adequate factual allegations to support a finding of an equal right of control between the parties. The Defendants

specifically fail to make any plausible allegation that the Developer had any right to exercise control over the actions of the Bank. The Defendants' conclusory allegation that the Developer "directed the actions of [the Bank] via inducements of lavish gifts and vacations, as well as promises of extraordinary loan volume for [the Bank] and its incumbent fees and interest" [Id. at ¶ 50] is not sufficient. Further, while the Defendants allege that the Bank exerted financial control over the Development [see Am. Answer, Doc. 10 at ¶¶ 51, 52(d)], such allegations, without more, are not sufficient to support a joint venture. See Andrews v. Primus Telecomms. Group, Inc., 107 F. App'x 301, 306 (4th Cir. 2004) (per curiam) (applying Virginia law; rejecting argument that control element was established when one party's financial investment in the other party was necessary for the continuing viability of the other party).

For all of these reasons, the Court concludes that to the extent that any of the Defendants' counterclaims rest on a theory of a joint venture between the Bank and the Developer, such counterclaims must fail.

### b. Claim for Rescission of Conveyance

The Defendants contend that they are entitled to rescission of the purchase and transfer of the Seven Falls lot, as their assent to the purchase

and transfer of the property was induced by a fraudulent or material misrepresentation by agents of the Developer and of the Bank. [Am. Answer, Doc. 10 at ¶¶ 67-71].

At the outset, the Court notes that the Defendants' characterization of their first two causes of action as "claims for rescission" is inaccurate. Rescission itself is not a cause of action; it is a remedy to be sought where a party alleges to have been fraudulently induced into entering into a contract. See, e.g., Collier v. Bryant, 719 S.E.2d 70, 82 (N.C. Ct. App. 2011) (noting that party claiming fraud must elect between remedy of repudiating contract and seeking rescission or remedy of affirming contract and seeking damages).

In any event, to the extent that the Defendants attempt to assert a claim against the Bank for rescission of the conveyance of the subject property, such claim must be dismissed. The Defendants do not allege that the Bank was a party to the conveyance which the Defendants seek to rescind. To the contrary, the Defendants allege that the Seven Falls lots were owned, and subsequently sold, by the Developer. [See Am. Answer, Doc. 10 at ¶ 34 (alleging that "the substantial majority of the Seven Falls development was owned by Seven Falls, LLC and Seven Falls Golf and River Club, LLC"); ¶ 56 (alleging that the Bank "encourage[d] the sale of lots by the Seven Falls

Defendants")].  As such, the Defendants may assert this rescission "claim" only against the Developer.  Because the Defendants cannot seek, as against the Bank, rescission of a purchase contract or deed to which the Bank was not a party, the Defendants' "claim" for rescission must be dismissed.

### c.    Claims for Rescission of Promissory Note and for Fraudulent Misrepresentation

The Defendants further contend that they are entitled to rescission of the financing agreements executed by the Defendants and the Bank, as their assent to these financing agreements was induced by fraudulent misrepresentations of the Bank.  [Am. Answer, Doc. 10 at ¶¶ 72-76].  In the alternative, the Defendants seek damages arising from the Bank's fraudulent misrepresentations.  [Id. at ¶¶ 93-97].  The Bank moves to dismiss both claims, arguing that the grounds alleged by the Defendants are insufficient to state claims as a matter of law.

As noted above, the Defendants' "claim" for rescission is in fact a claim for fraud for which the Defendants seek the remedy of rescission.  Thus, in order to seek rescission of the financing agreement, the Defendants must state a plausible claim for fraud.  In order to state a claim for fraud under North Carolina law, a party must allege a false representation or concealment of a material fact that: (1) was reasonably calculated to deceive; (2) was made

with the intent to deceive; (3) did in fact deceive the plaintiff; and (4) resulted in damages to the party. <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 189 (4th Cir. 2007). Additionally, the party must demonstrate any reliance on the false representations was reasonable. <u>See</u> <u>id.</u>

Where a party's allegations sound in fraud, the allegations must satisfy the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure. <u>Cozzarelli v. Inspire Pharmaceuticals Inc.</u>, 549 F.3d 618, 629 (4th Cir. 2008). Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 applies not only to claims asserting common law fraud, but to all claims where the allegations have the substance of fraud. <u>Cozzarelli</u>, 549 F.3d at 629. A claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b). <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 783 n.5 (4th Cir.1999).

Here, a review of the Defendants' Amended Counterclaims reveals that the Defendants make broad and conclusory assertions of allegedly fraudulent statements made "by [Bank] and Seven Falls representatives" without

identifying: the person who made each of the alleged fraudulent statements; the recipient of each statement; or the time and place where each alleged fraudulent statement occurred. These general, conclusory allegations are insufficient to comport with the requirements of Rule 9(b). See Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 980 (4th Cir. 1990) (requiring complaint to "specifically allege the time, place and nature of the fraud"). Thus, the Court concludes that these counterclaims should be dismissed.

Even if the Defendants' allegations were sufficient to withstand scrutiny under Rule 9(b), such allegations fail to state a cognizable claim for relief. For example, it is alleged that unidentified NBSC and Seven Falls representatives advised the Defendants that the purchase of the Seven Falls lot "was a short term investment that was guaranteed to outperform the market...." [Am. Answer, Doc. 10 at ¶ 59]. Such assertion, however, constitutes nothing more than the expression of opinion. "A representation which is nothing more than an opinion as to the value of property, absent something more, does not constitute actionable fraud." Hall v. T.L. Kemp Jewelry, Inc., 71 N.C. App. 101, 106, 322 S.E.2d 7, 11 (1984). And while North Carolina law recognizes that "a statement purporting to be opinion may be the basis for fraud if, at the time it is made, the maker of the statement holds an opinion contrary to the

opinion he or she expresses, and the maker also intends to deceive the listener," <u>Leftwich v. Gaines</u>, 134 N.C. App. 502, 509-10, 521 S.E.2d 717, 723, <u>disc. rev. denied</u>, 351 N.C. 357, 541 S.E.2d 713 (1999), the Defendants fail to make any plausible allegations that the maker of these statements held such a contrary opinion and intended to deceive the Defendants by making such statements.

The Defendants further allege that in the course of refinancing negotiations, NBSC never informed the Defendants that a "curtailment" had been required of the Developer or that NBSC had cancelled and withdrawn loans to the Developer which could have been used to complete the Seven Falls Development. [Am. Answer, Doc. 10 at ¶ 65]. The Defendants fail to explain, however, how such information was material to their decision to refinance their preexisting obligations to the Bank. Further, the Defendants allege that "NBSC assured Okay Properties and other lot owners that development at Seven Falls Defendants [sic] would be completed." [<u>Id.</u>]. Such statements, however, are clearly based upon predictions of future actions or outcomes and are therefore not actionable as fraud, absent some plausible allegation that the speaker held an opinion to the contrary and made

such statements with the intent to deceive.  See Leftwich, 134 N.C. App. at 508-10, 521 S.E.2d at 722-23.

Even if the Defendants had properly alleged a claim for fraud, they would have to allege a sufficient factual basis to claim entitlement to rescission of the contract.  "As a general rule, a party is not allowed to rescind where he is not in a position to put the other in *statu quo* by restoring the consideration passed."  Opsahl v. Pinehurst, Inc., 81 N.C. App. 56, 65, 344 S.E.2d 68, 74 (1986) (quoting Bolich v. Ins. Co., 206 N.C. 144, 156, 173 S.E. 320, 327 (1934)).  Here, the Defendants make no allegation that they are in a position to repay the loan received from the Bank.[4]  The Defendants' failure to allege that they are in a position to return the consideration passed by the Bank precludes the Defendants from seeking rescission of the parties' contract.

For all of these reasons, the Defendants' claims for rescission of the parties' financing agreement and/or for damages arising from the Bank's fraudulent misrepresentation are dismissed.

---

[4]Presumably, if the Defendants were in a position to repay the loan, they would not be in default.

### d. Claim for Breach of Duty of Good Faith and Fair Dealing/Negligent Non-Disclosure

In their Fourth Claim for Relief, the Defendants assert a claim arising from the Bank's failure to disclose certain facts to the Defendants in the course of extending and continuing the Bank's financing of the Seven Falls lot. [Am. Answer, Doc. 10 at ¶¶ 85-92]. Specifically, the Defendants allege that the Bank failed to disclose material information regarding "the financial condition of the Seven Falls Development, Vinson, and his related entities, as well as the fraudulent inflation of land prices involved in the sale of the Seven Falls Lot." [Id. at ¶ 87]. The Bank seeks the dismissal of this counterclaim, arguing (1) that the Defendants have failed to identify any contractual provision which the Bank failed to perform in good faith and (2) that the Bank had no duty to disclose the information alleged by the Defendants.

A bank owes a borrower only those duties that are specified in the loan agreement. See Camp v. Leonard, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999) ("a lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party"); see also Angell v. Kelly, 336 F.Supp.2d 540, 550-51 (M.D.N.C. 2004) ("North Carolina courts are reluctant to impose extra-contractual fiduciary obligations even though parties to an arms-length transaction may have placed confidence in one another.

24

It is also well-settled that a debtor-creditor relationship does not give rise to a fiduciary duty.") (citations omitted).  The Defendants have not identified any cases construing North Carolina law that recognize an extra-contractual duty arises simply because misrepresentations are made before loan agreements are executed.   At least one case in which prior representations were apparently made, <u>Branch Banking & Trust Company v. Thompson</u>, did not mention such a distinction.  <u>See</u> 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (noting misrepresentation by BB&T officers prior to execution of loan documents but concluding that "[t]he record does not reveal any facts suggesting that the [defendants] reposed any sort of special confidence in BB&T which would serve to give rise to a fiduciary relationship."), <u>disc. rev. denied</u>, 332 N.C. 482, 421 S.E.2d 350 (1992).

While acknowledging the general rule that a debtor-creditor relationship does not give rise to a fiduciary relationship, the Defendants argue that North Carolina courts have recognized in some instances that a creditor may owe a duty of disclosure to a guarantor.   In support of this argument, the Defendants cite <u>Gant v. NCNB Nat'l Bank of N.C.</u>, 94 N.C. App. 198, 379 S.E.2d 865, <u>disc. rev. denied</u>, 325 N.C. 706, 388 S.E.2d 453 (1989).  The <u>Gant</u> case, however, relates to a lender's obligation to disclose to a guarantor

material information regarding *the borrower*. Id. at 199-200, 379 S.E.2d at 868. Gant does not stand for the proposition that a lender is obligated to disclose to a guarantor information regarding the status of the development of the property securing the loan. The Defendants' reliance on Gant and other similar cases, therefore, is unavailing.

The Defendants have failed to identify any contractual provision which the Bank failed to perform in good faith. Further, the Defendants' allegations do not support a finding of any type of special relationship between the Bank and the Defendants beyond that of the typical lender-borrower relationship so as to impose any extra-contractual duties upon the Bank. Accordingly, the Defendants' claim for the breach of duty of good faith and fair dealing/negligent non-disclosure must be dismissed.

### e. Chapter 75 Claim

In their Sixth Claim for Relief, the Defendants assert that the Bank's "misconduct" constitutes unfair or deceptive acts or practices in or affecting commerce, in violation of N.C. Gen. Stat. § 75-1.1, *et al.* ("Chapter 75").

In order to establish a violation of Chapter 75, a party must show: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury" to that party. Gray v. N.C. Ins. Underwriting

Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).  Here, the Defendants'

Amended Answer and Counterclaim fails to specify what acts of the Bank they

contend constituted unlawful trade practices.  While the Defendants assert

generally that the Bank "fail[ed] to comply with its own internal lending

standards"  [Am. Answer, Doc. 10 at ¶ 64], the Defendants' allegations fail to

demonstrate what such standards were or how the Bank deviated from those

alleged standards.   Further, while it is generally alleged throughout the

Amended Answer and Counterclaim that the Bank made false representations

to the Defendants, they have failed to allege with the requisite specificity what

misrepresentations that were made to them or how they suffered any actual

damages in reliance on these alleged misrepresentations.

Because it is supported by only conclusory allegations, the Defendants'

claim for unfair and deceptive trade practices must be dismissed.

### B.    Synovus Financial's Motion to Dismiss

Synovus Financial moves to dismiss the claims stated against it in the

Defendants' Amended Answer and Counterclaim on the grounds that such

claims fail to state a claim upon which relief may be granted.  [Doc. 12].

To the extent that the Court has concluded that the counterclaims

against Synovus Bank should be dismissed, the Court likewise concludes that

the claims against Synovus Financial should be dismissed as well. Accordingly, Synovus Financial's Motion to Dismiss is also granted.

### C. Defendants' Request to Amend

On the last page of their responsive brief, the Defendants argue that should it be determined that their allegations are insufficient to withstand the Rule 12(b)(6) motions, the Court should not grant any dismissal with prejudice but instead should permit the Defendants leave to amend their pleading. [Doc. 13 at 19].

The Defendants' request to amend is in violation of this Court's Local Civil Rule 7.1(C)(2),which requires all motions to be set forth as separately filed pleadings and not included in responsive briefs.  On this basis alone, the Defendants' request for leave is denied.

Even if the Court were to consider the Defendants' request as a properly filed motion, however, the Court would still deny the requested relief.  First, the Defendants do not offer any proposed amended pleading or specify in what manner they could supplement their pleadings to withstand Rule 12(b)(6) scrutiny.  Second, the request to amend was made in a dilatory and improper fashion.  The Defendants had twenty-one days from the filing of the Bank's

motion to dismiss to file amended counterclaims as of right.[5] Despite having the unilateral right to do so, the Defendants failed to amend their Counterclaims within the time required, thus requiring the Court to rule on the Motion to Dismiss. By seeking leave to amend only in the event that the Court determines that their claims cannot pass muster under Rule 12(b)(6), the Defendants' counsel essentially asks the Court to do his job for him by providing an advisory ruling regarding the sufficiency of the Defendants' pleading. Counsel's request not only misapprehends the purpose of a Rule 12(b)(6)motion, it fundamentally misconstrues the role of this Court.

For all of these reasons, the Defendants' request for leave to amend their pleading is denied.

### D.    Show Cause Regarding the Seven Falls Defendants

As noted previously, the Defendants' Amended Answer and Counterclaim also names Seven Falls, LLC, Seven Falls Golf and River Club, LLC, and Keith Vinson as additional "defendants" to the action but fails to identify these newly added parties as *third-party* defendants. In fact, no third

---

[5]A party may amend its own pleading once as a matter of course within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(B). In all other cases, a party may amend only with the consent of the opposing party or with leave of Court. Fed. R. Civ. P. 15(a)(2).

party complaint is clearly asserted anywhere in the Defendants' pleading.[6]

In light of these pleading deficiencies, the Defendants are directed to show cause in writing why Seven Falls, LLC, Seven Falls Golf and River Club, LLC, and Keith Vinson should not be dismissed from this action.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff Synovus Bank's Motion to Dismiss Counterclaims [Doc. 7] and Third Party Defendant Synovus Financial's Motion to Dismiss Third Party Claims [Doc. 8] are **DENIED AS MOOT** in light of the Defendants' Amended Answer.

**IT IS FURTHER ORDERED** that the Plaintiff Synovus Bank's Motion to Dismiss Amended Counterclaims [Doc. 11] is **GRANTED**, and the counterclaims asserted against Synovus Bank are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Third Party Defendant Synovus Financial Corp.'s Motion to Dismiss Amended Third Party Claims [Doc. 12] is

---

[6]Because the Defendants did not clearly file a third party complaint or identify any third parties in their pleading, the Clerk's Office has declined to issue summonses, and thus these parties have not been served.

**GRANTED**, and all third party claims asserted against Synovus Financial Corp. are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Defendants' request for leave to amend their pleading is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants shall show good cause in writing within fourteen (14) days of service of this Order why Seven Falls, LLC, Seven Falls Golf and River Club, LLC, and Keith Vinson should not be dismissed from this action.

**IT IS FURTHER ORDERED** that failure of the Defendants to respond in writing within fourteen (14) days shall result in a dismissal without prejudice of the Defendants' claims against Seven Falls, LLC, Seven Falls Golf and River Club, LLC, and Keith Vinson.

**IT IS SO ORDERED.**

Signed: August 27, 2012

Martin Reidinger
United States District Judge